## LA FLARE v. CHASE.

PATENTS; INTERFERENCES; PRIOR CONCEPTION; ABANDONMENT.

1. As between two parties to a patent interference proceeding, one of whom has a patent while the other is an applicant, the burden of proof is on the applicant to show that he is the true original and first inventor.

2. In such a proceeding, it was *held* upon a review of the testimony that if the patentee conceived the idea of the invention in controversy in 1883, it was abandoned by him and never reduced to practice, and that if it was again revived by him in 1891, which was questionable, he had been anticipated by a prior conception of his opponent in 1890 and his disclosure of it to several credible witnesses.

Patent Appeals. No. 38. Submitted November 18, 1895. Decided February 17, 1896.

HEARING of an appeal from the Commissioner of Patents in an interference proceeding. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from the decision of the Commissioner of Patents in a case of interference.

The issue of invention, which constitutes the subject-matter of interference, is the following:

"The packing for a door, consisting of a rigid strip faced with yielding material, springs at the back of said strip, said strip and springs being located in a recess at the meeting edge of the door or jamb, and a strip of canvas or like flexible material covering over said recess."

With reference to the character and purpose of the invention and the situation of the contestants we copy from the opinion of the Commissioner the following clear, terse, and accurate statement:

"The interference is between an application and a patent. The invention is a spring packing to be used on a door or

jamb of a refrigerator car for the purpose of closely packing
the joints.    Prior to the making of this invention refriger-
ator car doors were packed with felt or the like material;
but owing to the alterations of dampness and dryness, on
the one hand, they became so swollen that it was difficult
to open them without the use of crowbars or sledges, and
frequently the packing would become so compressed by the
swelling of the door as to entirely lose its elasticity.    On
the other hand, the doors became so shrunken as to leave
cracks in the joints of the doors or jambs, through which
would readily pass strong currents of air, to which the cars
were subject while in transit.    To remedy these defects in
the old construction of refrigerator car doors this invention
was made.

" At the time the invention was reduced to practice both
parties to this interference were employed by the Chicago,
Boston and Liverpool Company, at Elsdon, Ill., Chase as
superintendent and La Flare as general foreman.    This com-
pany was engaged in repairing and reconstructing old refrig-
erator cars and building new ones.    Chase came to Elsdon
in the employ of the company in March, 1891.    La Flare
was in employ of the company several years prior to this,
first as engineer, then as foreman of the woodshop, and
finally as general foreman.    Wells and Patch, witnesses for
La Flare, are also employees of the company, the former as
foreman of the woodshop and the other as repairer.    These
positions they held at the time the invention was put into
practice."

The appellee, Rodney G. Chase, claims to have conceived
the invention in June of 1883, to have explained it to others
in the same month and year, and to have reduced it to prac-
tice in the month of May of 1891 in the shops of the com-
pany which employed him, at Elsdon, in the city of Chicago.
He applied for a patent on April 30, 1892, and the patent
was issued to him on August 2, 1892.

The appellant, Myron J. La Flare, claims to have con-
ceived the invention in February, 1890, to have made a

drawing of his invention and explained it to others in September of 1890, and to have reduced it to practice in the months of July and August of 1891 in the same shops in which Chase claims to have reduced the invention to practice, the act of reduction referred to by both parties being, in fact, the same act.

Upon the testimony in the case the examiner of interferences adjudged the priority of invention to belong to La Flare, and his decision was affirmed by the board of examiners in chief; but upon appeal to the Commissioner of Patents the decision of the examiner and of the board of examiners in chief was reversed and priority of invention was awarded to Chase. From the decision of the Commissioner La Flare has appealed to this court.

*Messrs. Munday, Evans & Adcock* for the appellant.

*Mr. J. H. Raymond* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

Inasmuch as Chase, the appellee, has a patent for the invention, that fact in accordance with the well-established rules of law in such cases, undoubtedly gives him *prima facie* right and title and imposes upon the appellant the burden of showing beyond a reasonable doubt that he, the appellant, and not the appellee, is justly entitled to be regarded as the true original and first inventor, and this would seem to be a rather difficult position for the appellant, since the tribunals of the Patent Office are at variance upon the subject, two having sustained the appellant and one the appellee, and it might well be inferred, therefore, that the question of priority was not free from reasonable doubt, and consequently that the appellee should be left in the undisturbed possession of the patent which he had procured; but the force of this position, as will be apparent, must be greatly modified in this case by the peculiar circumstances.

*Prima facie* the rival claims of the parties would seem to

show a case of two independent inventors proceeding upon the same lines toward the realization of the same idea occurring to them separately without knowledge of each other or any connection between them, wherein, however, the appellee, Chase, would appear to be in all respects prior to his opponent in point of time ; but the testimony discloses a different and more complex situation.    The parties, for a time at least, were not without knowledge of each other. On the contrary, they were brought into close relations with each other during the year in which the invention is stated by both to have been reduced to practice.    They were both in the employment of the same company and in communication with each other with regard to the subject-matter of the invention, and there was co-operation by both in the acts which are claimed by each to be the reduction of the idea to practice.

The claim of Chase is that he conceived the idea of the invention about June 1, 1883, in the city of Boston, where he was then residing, induced thereto by the fact that at that time his house refrigerator was worn out and needed repair, and that one day, as he was standing in the street, he noticed a refrigerator on the sidewalk which excited his curiosity and set him to thinking.    The idea then occurred to him, as he states, to put a packing around the door of the refrigerator and on the face of the packing a cover with a spring and soft cushion that would insure a close contact. He says that on June 19, 1883, he explained his idea to a plumber, one John O. Nelson, whom he had employed to make a new tank for his worn-out refrigerator, and that the explanation was made with the aid of a sketch drawn on the back of a bill which the plumber had presented for the work done by him on the refrigerator.    The date of the sketch he fixes by the date of the bill ; otherwise the sketch was without date.    He did not, however, embody the idea in his refrigerator, and it is not apparent why he explained the idea at that time to the plumber, for it does not seem that it was then sought to make any use whatever of it.    In fact,

it does not appear that the appellant ever thought of his idea again, if he ever had it, until after he went to Elsdon and entered the service of the Chicago, Boston and Liverpool Company, as superintendent, on or about March 1, 1891.

The sketch was thrown aside and apparently forgotten, and Chase did not find it again until December of 1893, a few days after the receipt by him of the notice of contest in this case and upward of ten years after it had been thrown aside. He then discovered it in his house in Boston, where it had remained during all these years.

Of this sketch Chase and the plumber, Nelson, were the only witnesses. The latter, although he had never seen it again from the day on which it was first exhibited to him by Chase at the house of the appellee in Boston on June 19, 1883, until the day before he was called to give his testimony in regard to it at Chicago (April 7, 1894), and had no interest whatever in it or in the subject-matter, did not hesitate to testify with a truly marvelous and most astonishing memory to a recollection of its most minute details.

It was the business of the Chicago, Boston and Liverpool Company to construct and repair refrigerator cars; and Chase states that after his entrance into the service of that company his idea recurred to him and he recollected the sketch that he had made, although he did not then remember that the sketch was in existence. There was no development, however, of the idea until July 2, 1891, when, as the appellee says, having made a sketch of the change in the construction of a car door and a door jamb, which he desired to be made in order to carry into effect the idea of a spring packing as it had occurred to him in connection with his house refrigerator in Boston, he took this new sketch to La Flare, whom he found at the time with Wells in the office of the latter, and there he explained to both of them what he desired to be done. Chase's account of this interview, which differs very materially from that given by La Flare and Wells, is as follows:

" After explaining the idea Mr. Wells, who was standing at my left, turned to Mr. La Flare, who was standing at my right, and said: ' He has got onto our spring packing.' They then told me that the idea was not a new one to them ; they had thought of it before and talked of it before, and had tried to have Mr. Whitehouse, when he was superin-tendent of the company, preceding me, put the appliance on. We discussed the idea, talking over the question of the springs, among other parts, with the idea of their present-ing to me any objections or obstacles that might occur to them in the operation.    Mr. La Flare's idea at the time was to use a flat spring similar to the one in the sketch which I have shown of my first conception of it, instead of a coil spring, which I wanted used.    I did not consent to this, stating that it would be more expensive to prepare for the spring by cutting a groove than by boring a hole for a coil spring.    As a result of this conversation, I told them to go ahead and prepare a car for this packing."

Immediately after this interview, and on the same day, Chase left Elsdon for Boston, where his home and family still were, taking with him the sketch which he states he had shown to La Flare and Wells.    The history of this sketch, which seems to be of considerable importance in the case, is that it was prepared by Chase a short time be-fore the interview of July 2, 1891, and possibly on the same day ; that Chase took it to Boston with him on that day and left it at his house there ; that, although he was in Boston on two other occasions between this time and the 29th of August, he seems to have made no use of the sketch there, but that on a visit to Boston between August 29 and Sep-tember 14 of 1891 he used it, with a mechanical draftsman of that city, who was preparing some drawings for him, and that he then brought it back with him to Elsdon.    It is proper here to say that La Flare and Wells deny very em-phatically that the sketch produced in testimony by Chase was the one that was exhibited by him to them on July 2, 1891.

After their interview with Chase, La Flare and Wells proceeded forthwith to fit up with the device in question a car, No. 7501, of the National Dispatch Line of refrigerator cars, then in the shops of the company, and the device proved a success.    This was in July and August of 1891, and was confessedly the first reduction of the invention to practice by any one.    Subsequently numerous other cars were fitted up with the appliance.

This is the account of the transaction given by Chase in his testimony.    It does not conform to his preliminary statement filed in the Patent Office upon the declaration of the interference.    In this preliminary statement, even as amended (for he had occasion to amend it), he swore " that on or about May 1, 1891, he commenced the construction of full-sized working refrigerator apparatus embodying said invention, and that during the month of May, 1891, and at various times thereafter, the said invention was embodied in full-sized working refrigerator apparatus, and the said invention was successfully operated during the month of May, 1891, and thereafter, in the city of Chicago, and elsewhere."

When upon cross-examination his attention was directed to the inconsistency between this amended preliminary statement and his testimony to the effect that there was no attempt to reduce the invention to practice before July 2, 1891, his explanation was wholly unsatisfactory, and the inconsistency between his statement and his testimony remains unexplained.

On April 30, 1892, Chase applied for a patent for the invention, and obtained it on August 2, 1892.    La Flare knew nothing of his application or of the issue of the patent until after the lapse of two months thereafter.    About five months after he had become acquainted with the fact that a patent had been issued to Chase he made the application for himself out of which these proceedings have resulted.

The story of La Flare, which is corroborated in every essential particular by Wells, his associate in the works, and by three other apparently disinterested witnesses, is to this

effect: He says that he conceived the idea of invention about February 1, 1890; that about September 1, 1890, he explained it and exhibited drawings of the device to Wells and and others, and that it was reduced to practice in the months of July and August of 1891. He says that in May or June of 1891 he explained his invention to Chase and showed him drawings of it, which were afterward burned with some rubbish; that he had previously, without effect, solicited from Whitehouse, the predecessor of Chase, permission to apply the idea; that upon the explanation of the idea to him Chase expressed satisfaction, but said little, but that ultimately, about the beginning of July, 1891, he obtained permission from Chase to test the idea upon a car, No. 7501, of the National Dispatch Line, then in the shops of the company for repair, upon which it was applied with success.

La Flare and Wells differ as to the date of the interview between them and Chase, which the latter testifies to have been on July 2, 1891, and wherein the direction or permission was given to test the invention. La Flare says that it was in the latter part, Wells in the early part, of July, 1891; but their account of what happened at the interview is the same in substance. Both testify that the drawing or sketch exhibited by Chase on that occasion was not the sketch which he produced in evidence as having then been exhibited by him, but was merely a sketch for a lip-door; that after they had talked about the subject of lip-doors Chase said to La Flare, " Now, about that spring packing?" that Wells then produced a sketch which he had made of La Flare's idea, with the remark to La Flare that he (La Flare) had put Chase onto their spring packing; that the subject of spring packing was then fully discussed, and that Chase finally said: " Go ahead, boys, and get out a set of doors, and I will look at them when I get back (from Boston)." And La Flare and Wells then proceeded to apply the invention.

There was also testimony to show that Chase had spoken of the invention as La Flare's idea, as well as testimony in contravention of this.

We feel ourselves constrained wholly to discredit the story of the appellee, Chase. His preliminary statement, which should have been made, and which we must presume was made with due care and deliberation, is undeniably false in the essential statement of the time when his alleged invention was reduced to practice. There was no justification for that statement. He had already procured his patent and he should have known the true data upon which that patent was based. He had in his possession the memoranda upon which he fixed the date of the interview (July 2, 1891) at which, as he claims, he communicated his invention to La Flare and Wells and directed them to reduce it to practice, and with the knowledge in his possession to be derived from those memoranda, if he did not have it otherwise, it was recklessness or worse for him to aver under oath that he had made in May the reduction to practice which his own testimony shows conclusively could not have been made until after July 2. If we were to apply the maxim *falsus in uno falsus in omnibus,* we might stop here and resolve the case at one against the appellee.

But there is another remarkable feature of this case, the marvelous testimony of the witness, Nelson, who is able after the lapse of eleven years to remember the minutest details of a drawing or casual sketch of a matter in which he never had an interest of any kind and where there does not appear to have been anything to excite an unusual effort of memory. Such phenomenal recollection of details as he manifests is not an impossibility, but it is extremely improbable, and in the absence of explanation of some kind we are compelled to disregard such testimony.

If the appellee had in the year 1883 the germ of the idea which was reduced to practice in the shops at Elsdon in 1891, and there is some reason to the question whether the idea was the same, it is very evident that nothing practical came of it during the intervening years and that it had been relegated to the shadowy realms of forgotten thoughts. Was the idea revived again at Elsdon? There is no proof what-

ever that it was revived, if at all, before July 2, 1891, and the proof is ample that La Flare had conceived the idea long before that, had explained it and exhibited designs of it to others; and had solicited permission to put his idea to the test of practical experiment. When, on July 2, 1891, Chase communicated his idea, as he claims, to La Flare and Wells, he admits that they were familiar with it, and yet he had not disclosed it to them or to anyone else at Elsdon or to any mortal man other than his witness, Nelson, at Boston in 1883. When they expressed to him their familiarity with the idea, he asked no question and sought no explanation, as would naturally have been done on such an occasion. His conduct in taking away the sketch, as he says he did, to his house in Boston, is not without liability to suspicion. If the idea was that of Chase and the sketch was intended to be the guide of those to whom he gave directions for its reduction to practice, it should have been left in the shops and not taken away. The explanation for taking it to Boston, which was, as it is claimed, to have some drawings made from it, for what purpose does not appear, is not satisfactory. If it was designed to submit it to a draftsman, it is not explained why it was not done at the appellee's first visit to Boston after July 2, 1891. The whole course of the appellee with regard to his alleged invention is peculiarly open to suspicion; while, on the other hand, the conduct of the appellant seems to have been straightforward throughout.

We think that the testimony fully and completely establishes the fact that if the appellee conceived the idea of the invention in controversy in the year 1883 it was abandoned by him and never reduced to practice, and that if it was again revived by him in 1891, which we regard as not established by the testimony, he had been anticipated by the prior conception of the appellant in 1890 and his disclosure of it to several credible witnesses. In our opinion the testimony is ample to show that the interview of July 2, 1891, had reference to the idea and the invention of La Flare and that the reduction to practice thereafter was the embodiment of La Flare's idea and should be held to inure to his benefit.

We must conclude that there was error in the decision of the Commissioner of Patents in this case, and we concur with the conclusions reached by the examiner of interferences and the board of examiners in chief, to the effect that the appellant, La Flare, is entitled to priority of invention.

We shall therefore *reverse the decision and direct a certificate of the proceedings in this court and of this decision to be returned to the Commissioner of Patents, to be entered of record in the Patent Office, as the law directs.*